<hr/>

## Case No. 15,960b.

UNITED STATES v. ONE THOUSAND SEVEN HUNDRED AND FIFTY-SIX SHARES.

[Betts' Pr. Cas.]

District Court, S. D. New York. Feb. 24, 1864.

WAR — ALIEN ENEMY — CONDEMNATION OF PROPERTY—OWNERSHIP—PARTIES.

[Upon a libel of information by the United States to condemn property of an alien enemy consisting of certain railway shares, the railway company cannot become a party without showing. as provided by admiralty rule 12, that it is the true and bona fide owner, and that no other person is the owner of the property in dispute.]

[Libel of information by the United States to condemn 1,756 shares of the capital stock of the Great Western Railroad Company of Illinois. A motion by the United States to strike out the answer, claim, and appearance interposed in behalf of Leroy M. Wiley was granted. U. S. v. One Thousand Seven Hundred and Fifty-Six Shares, Case No. 15,960a. Heard on motion by the United States to strike out the answer and claim interposed in behalf of the Great Western Railroad Company.]

The District Attorney. for the United States.

Mr. Lord, for the Great Western Railroad Company.

BETTS. District Judge. The information demanding the forfeiture of the effects prose-

cuted in rem in this suit was filed August 25, 1863. Process of attachment and monition in due form of law was issued to the marshal, under the seal of the court, the same day, against the property named in the information, returnable in court the 15th of September thereafter. On that day it was returned by the marshal, with a certificate endorsed thereon, officially, that he had, on the 25th day of August, 1863, attached the above described 1,756 shares of stock, and given due notice to all persons claiming the same, &c.

It is unnecessary to detail the intermediate steps taken by parties attempting to intervene and make defenses in the suit, or all the past proceedings before the court, in respect to the same. It is sufficient to say, that in November term, 1863, the court, on motion of the United States attorney, and after hearing the respective parties, ordered the answer and claim interposed in the case, in defence of the suit in favor and support of the alleged ownership or interest of Leroy M. Wiley in the stocks and property seized in the suit, to be stricken or withdrawn from the case, because he was a resident in one of the Confederate States, and an enemy of the United States, and as such incapacitated to maintain an action, or become a party litigant in his own right, in a civil cause of action in a court of the United States, during such disability. October 17, 1863, an answer and claim were put on file in the cause in the name of the "Great Western Railroad Company of 1859, intervening for the benefit of themselves, and as trustees of such other persons as may be entitled to 1,756 shares of the capital stock of the said company, and to $53,000, or thereabouts, alleged to be due, owing, and unpaid upon certain coupons or certificates of indebtedness and promises to pay, belonging to, and alleged to be cut off and detached from certain bonds of the said corporation." [The suit was discontinued as to everything but the stock, and dividends thereon.] Under the representation of title or right vested in themselves, that corporation attempt to claim a legal right to intervene and contest the subject-matter involved in the suit initiated in this information, and defend the suit, as against (1) the act of forfeiture charged therein; (2) the jurisdiction of the court in the case; (3) the liability of the property seized for any culpability of Wiley, the party charged. On the 14th of November thereafter, the United States attorney obtained an order from the court, for four days' further time, to file exceptions to the above claim and answer, but such proceedings seem to have been taken by mutual understanding between the respective counsel, that ultimate action was not perfected by the submission to the court of their differences in regard to the pleadings for consideration, until the 16th of February, 1864.

The points for determination on the merits accordingly now are, whether the railroad company has perfected a lawful appearance in the cause upon any rights of their own, in relation to the subject in litigation, or whether there is on the evidence any lawful right of representation in the suit, with Leroy M. Wiley individually, or independent of his personal appearance, through the instrumentality of the railroad company or its agents.

I perceive no reason for reviewing the ground taken in the previous appearances in defence of Wiley himself, under this same prosecution, that he has no standing in court as a volunteer party. The rule seems to be unequivocally determined both in the English and American practice, that an alien enemy is incapable of maintaining a suit while he retains that character. Story, Eq. Pl. § 51. As an enemy in rebellion or insurrection in open hostility against his own country, he is stamped with all the disabilities of an alien. Jecker v. Montgomery, 18 How. [59 U. S.] 112; The Prize Cases, 2 Black [67 U. S.] 635. I think the fair import of the intervention of the railroad company, although nominally in a corporate form, is virtually based upon no other interests than those resting personally in Wiley, and consequently cannot be sustained in an American judicatory. Palpably it is only because he cannot vindicate an individual interest in this property by force of law, that an impalpable interest is surmised and put forward as possessing vitality enough to retain for his benefit, directly or circuitously, through the assumption of equities resting in his agents or creditors, the property which would, under the laws of his just allegiance, be doomed to the expiation of his crimes against his country. That property is returned in court as under actual seizure by the marshal on the process issued against it. Its situs was at the time accordingly within the jurisdiction of the court, whether placed in charge of a foreign or alien, natural or political person. If technically there might be ordinarily impediments to carrying on suits for private debts or claims against property held out of the regular scope and action of the machinery of the law, that consideration cannot avail against confiscation statutes, which remove all limitations and restrictions of the government in that respect, and authorize the arrest of the inculpated property and its forfeiture wherever it may be found, or however it may be represented. Act July 17, 1862 (12 Stat. 591, § 7). The statute places the captured property, subject to all the liabilities if arrested here, in the actual keeping of a remote corporation, as if it was within the authority and vaults of a bank or railroad corporation of the city of New York.

Independently of these general principles which subject the effects of traitors to confiscation by means of summary actions ap-

pointed by statutory provisions free of the common law formalities, the parties attempting to intervene in this suit and litigate the rights of the government in prosecution, do not qualify themselves to intermeddle in the matter. The 26th rule in admiralty of the supreme court requires every person, in order to be received as a defendant, entitled to controvert the right to property of any kind seized in rem by another, "to verify his own claim on oath, stating that the claimant, by whom or on whose behalf the claim is made, is the true and bona fide owner, and that no other person is the owner thereof." No such proof is affixed to the claim in this instance; nothing beyond a hypothetical and equivocal intervention is furnished at all, and that is by a person having no personal interest in the matter, and not being a legal representative of the corporation attempting to appear, and who is supposed to apprehend it may incur a contingent liability in respect to the effects seized. No adequate evidence is therefore before the court, authorizing the railroad to appear in this cause to resist its progress, or question the full right of the informants to press the same to a legal decision. The case of Brown v. U. S., 8 Cranch [12 U. S.] 110, cited by the claimant's counsel, fortifies the principle of this decision. The seizure of the property was there adjudged illegal, because there was no authority of law justifying its condemnation, whilst this proceeding is sanctioned by express statute. Acts Aug. 6, 1861 [12 Stat. 319], July 17, 1862 [12 Stat. 591]. The motion on the part of the United States attorney to strike the claim and answer from the files of the court in this suit is granted.

[Thereafter a decree was rendered for libelants, but was reversed, and the libel dismissed by the circuit court in Case No. 15,961.]